THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**YARELIZ FALCÓN**, *et al.*,

    **Plaintiffs,**

    v.

**DOCTORS' CENTER HOSPITAL**, *et al.*,

    **Defendants.**

**Civil No. 18-1929 (ADC)**

**OPINION AND ORDER**

Before the Court are co-plaintiffs Yareliz Falcón and Jancy Segarra's (together, "plaintiffs") motion to strike co-defendant Doctors' Center Hospital's ("DCH") motion for summary judgment. **ECF Nos. 60 and 55,** respectively. DCH responded in opposition. **ECF No. 61.** For the reasons set forth below, plaintiffs' motion to strike is **GRANTED**.

**I. Factual and Procedural Background**

*i. The Suit*

Plaintiffs sued DCH, a local hospital, pursuant to this Court's subject-matter jurisdiction.[1] **ECF No. 4**. *See also* 28 U.S.C. § 1331, *et seq*. Specifically, plaintiffs brought suit against DCH under the Emergency Treatment and Active Labor Act ("EMTALA"). **ECF No. 4**. *See also* 42 U.S.C. § 1395, *et seq.* Plaintiffs additionally raised supplemental tort claims under Puerto Rico law against DCH and two physicians: Dr. Glisette Rodríguez-Peña and Dr. Lourdes López-Galarza. **ECF**

---

[1] Plaintiffs filed suit on their own behalf as well on behalf of their deceased minor daughter.

**No. 4**. *See also* 28 U.S.C. § 1367. SIMED and Puerto Rico Medical Defense, two insurance companies, were initially included in the complaint, but later voluntarily dismissed by plaintiffs. **ECF Nos. 9, 10, 13, 14 and 16.** The claims against Dr. Glisette Rodríguez-Peña were also subsequently dismissed. **ECF No. 53 and 59.**

*ii. The Factual Allegations*

Plaintiffs allege in their amended complaint that their deceased minor daughter, Jariangelyz Segarra-Falcón ("Jariangelyz") – 7 weeks old at the time – was admitted to DCH's emergency room on December 4, 2017. **ECF No. 4** at 5. Plaintiffs posit that Jariangelyz presented "bilateral rhonchi, wheezing, subcostal retractions, and frequent coughing" and was "acutely ill, pale, had dry oral mucosa and [sic] bilateral wheezing." *Id*. at 4-5. Plaintiffs affirm that over the course of the next two days, Jariangelyz was not given appropriate medical attention or treatment. *Id.* 4-7. Then, plaintiffs maintain, Jariangelyz became unresponsive on December 6. *Id.* at 6. Plaintiffs assert that "Jariangelyz had an endotracheal tube placed and was undergoing active resuscitation efforts including CPR and the administration of medications. Her condition was very extremely unstable and yet she was transferred to Hospital UPR where she was declared dead 13 minutes after her arrival on December 6, 2017." *Id.* at 7.

*iii. The Procedural Travel* [2]

On August 23, 2019, the Court entered a case management order setting May 29, 2020 as the deadline for conclusion of all discovery and June 30, 2020 as the deadline for filing

---

[2] None of the defendants party to this case filed a motion to dismiss.

dispositive motions. **ECF No. 33.** On June 16, at a settlement conference before United States Magistrate Judge Marshal D. Morgan, the Court advised DCH that the discovery deadline had elapsed and the deadline to file dispositive motions was forthcoming, and that an extension thereof would need to be sought from the undersigned. **ECF No. 45**. DCH did not move the Court for an extension of time, for permission to receive additional discovery or even to apprise the Court of any situation warranting its attention,[3] as instructed by the Magistrate Judge.

On January 4, 2021, more than seven months after the discovery deadline had elapsed and six months after the timeframe for filing dispositive motions had expired, the Court entered an order stating: "ORDER. Considering the parties actions and omissions, the deadline to file dispositive motions is deemed waived. As such, the case is trial ready." **ECF No. 49**. Thereafter, DCH remained silent for 25 days until it filed, without seeking leave from the Court, an almost-seven-months-late motion for summary judgment. **ECF No. 55.**

Plaintiffs moved to strike, noting the belatedness of DCH's motion for summary judgment. **ECF No. 60**. DCH, in an uncharacteristically swift display, responded in opposition merely two days later. **ECF No. 61**.

In its response, DCH alleges that the Court is obliged to entertain its motion for summary judgment, untimely as it may be, because it is founded on arguments related to subject-matter jurisdiction which cannot be waived and can be raised at any time throughout litigation – even after a verdict has been rendered. *Id.* While the Court agrees, as it must, that subject-matter

---

[3] Crucially, DCH did not complain of the discovery setbacks it uses as an unconvincing and irrelevant excuse now.

jurisdiction can be impugned at any stage of proceedings, DCH's assertion that its motion for summary judgment constitutes a challenge to the Court's statutorily conferred authority or power to entertain the above-captioned case is deeply misguided and, quite plainly, wrong.

## II. DCH's Motion for Summary Judgment

DCH's motion for summary judgment, **ECF No. 55**, levies three distinct arguments. First, DCH claims that Jariangelyz's transfer while in an unstable condition complied with EMTALA because the physician who ordered the transfer judged it to be the best alternative for treating and saving the patient. *Id.* at 3 and 8-17. Second, DCH avers that plaintiffs cannot sue under EMTALA in their personal capacity because they were not the patient who suffered the alleged EMTALA violation and did not otherwise adequately plead an inherited cause of action. *Id.* at 4 and 17-20. DCH contends that this amounts to a lack of standing to sue. *Id.* Third, and finally, DCH protests that EMTALA's civil remedy draws upon substantive state law, which requires a here absent causal relationship between the alleged violation and the damage. *Id.* at 4, 20-23.

As will be explained below, none of the three constitutes a challenge to subject-matter jurisdiction. Each is, instead, an argument attacking elements or merits of plaintiffs' case couched as jurisdictional defenses in an ill-fated attempt to excuse DCH's inexcusable delay in moving for summary judgment on these grounds.

## III. Applicable Law

Jurisdiction is the power of the Court to declare the law. *Peterson v. United States*, 774 F. Supp. 2d 418, 421 (D.N.H. 2011). *See also United States v. George*, 676 F.3d 249, 259 (1st Cir. 2012)

("Subject matter jurisdiction refers to a court's power, whether constitutional or statutory, to adjudicate a case."). "When it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."[4] *Peterson*, 774 F. Supp.2d at 421 (citation omitted).

The Supreme Court has endeavored to "bring some discipline" to the use of the term "jurisdictional." *González v. Thaler*, 565 U.S. 134, 141, (2012). "To that end it has announced a readily administrable bright line: a statutory provision is jurisdictional only if Congress has clearly stated that it is." *Cebollero-Bertrán v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 70–71 (1st Cir. 2021)(cleaned up)(*quoting Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)). If Congress does not clearly state that a provision is jurisdictional, courts should treat it as "nonjurisdictional in character." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)(*quoting Arbaugh*, 546 U.S. at 516).To decide whether a provision presents a jurisdictional rule, courts consider the statutory "condition's text, context, and relevant historical treatment." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). "A rule should not be referred to as jurisdictional *unless it governs a court's adjudicatory capacity*, that is, its subject-matter or personal jurisdiction. Other rules, even if important and mandatory should not be given the jurisdictional brand." *Henderson ex rel. Henderson, v. Shinseki*, 562 U.S. 428, 435 (2011) (cleaned up)(emphasis added).

The same analysis applies when determining if satisfaction of a statutory element poses a jurisdictional question. Indeed, "subject matter jurisdiction in federal-question cases is

---

[4] "It is fundamental that where the court dismisses a case for want of jurisdiction, it should not adjudicate the merits." *Guthrie v. Dow Chem. Co.*, 445 F. Supp. 311, 315 (S.D. Tex. 1978).

sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." *Arbaugh*, 546 U.S. at 511 (*quoting* 2 J. Moore et al., MOORE'S FEDERAL PRACTICE § 12.30[1], p. 12–36.1 (3d ed.2005)). Thus, unless otherwise clearly specified by Congress, a determination as to whether an element has been satisfied is a determination as to the merits of the case, rather than as to the Court's power to adjudicate the case.

As observed by Prof. Howard M. Wasserman:

> My basic argument has been that there should be no overlap in the definitions between jurisdiction and merits because statutory grants of federal jurisdiction focus on non-substantive questions, distinct from the source of the right sued upon. Jurisdictional rules ordinarily inquire about either the identity of the parties or the source of the legal right or liberty asserted; neither inquiry depends on the success of the substantive claim asserted. The Supreme Court recently recognized this in *Arbaugh v. Y & H Corp.*, holding that an element of the plaintiff's federal claim of right does not affect the court's jurisdiction; the plaintiff's success or failure in pleading and proving an element determines only whether the plaintiff prevails on the merits. *Arbaugh* commands, and I have argued, that courts should consider a provision of positive law as jurisdictional only when its plain language is addressed to the court and speaks in terms of judicial power about the class of cases that courts can hear and resolve.

Howard M. Wasserman, *Jurisdiction, Merits and Procedure: Thoughts on Dodson's Trichotomy*, 102 Nw. U. L. Rev. Colloquy 215, 216 (2008).

### IV. Discussion

DCH claims that Jariangelyz's transfer while in an unstable condition complied with EMTALA because the physician who ordered the transfer judged it to be the best alternative for treating and saving the patient. **ECF No. 55** at 3 and 8-17. After a careful reading of 42 U.S.C.A.

§ 1395dd(c), the provision of EMTALA regarding the transfer of patients, the Court finds that it does not speak in jurisdictional terms or govern the Court's adjudicatory capacity. *See Henderson*, 562 U.S. at 435. As such, the Court can only hold that whether Jariangelyz's transfer complied with EMTALA can only be termed an element of plaintiffs' case, rather than a jurisdictional issue. *See Arbaugh*, 546 U.S. at 516.

DCH's next contention (**ECF No. 55** at 4 and 20-23), that plaintiffs' EMTALA suit lacks the causal relationship between the alleged violation and the damage (as required by the applicable substantive state law), fares no better. The relevant provision of EMTALA, § 1395dd(d)(2)(A),[5] does not speak in jurisdictional terms or govern the Court's adjudicatory capacity, either. *See Henderson*, 562 U.S. at 435. Thus, establishing a causal relationship between the alleged violation and the damage cannot be a jurisdictional limitation, but rather an element or requirement on the merits of the substantive violation. *See Arbaugh*, 546 U.S. at 516.

Finally, whether plaintiffs properly file suit under EMTALA on behalf of their deceased daughter is also a non-jurisdictional question. As held above, § 1395dd(d)(2)(A) – the source of plaintiffs' substantive claim – does not speak in jurisdictional terms or govern the Court's adjudicatory capacity. *See Henderson*, 562 U.S. at 435. Still, this argument warrants closer inspection, because DCH frames it in the context of standing: that is, DCH claims EMTALA does not have a viable cause of action for plaintiffs' suit, and they therefore have no standing.

---

[5] "Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, *obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate*."

"The constitutional core of standing requires that a plaintiff make a tripartite showing: she must demonstrate that [they have] suffered an injury in fact, that [their] injury is fairly traceable to the disputed conduct, and that the relief sought promises to redress the injury sustained." *Osediacz v. City of Cranston*, 414 F.3d 136, 139 (1st Cir. 2005). However, DCH does not develop any argumentation as to these three core tenets. Instead, it relies simply on the argument that either EMTALA does not provide for an inherited cause of action or that one is not properly pleaded in this case. Both are erroneous.

In *Correa v. Hosp. San Francisco*, the First Circuit Court of Appeals left the door open to plaintiffs to raise inherited claims in EMTALA cases. 69 F.3d 1184, 1196 (1st Cir. 1995)("It is equally open to read the law as permitting an individual who has a special relationship with another … to sue when [they are] harmed in direct consequence of an EMTALA violation inflicted upon such other. When death results, this reading would naturally extend the statutory prerogative to individuals who are eligible to bring survivors' actions under local law."). DCH provides no basis for this Court to depart from that reading, and thus its contention flounders on that front.[6]

And, contrary to DCH's claims, plaintiffs include an inherited cause of action in their amended complaint by way of the following allegation:

> Additionally, *plaintiffs claim for their daughter's inherited cause of action for the physical and emotional pain and suffering sustained* while she remained hospitalized suffering

---

[6] DCH submits two cases Court in support of its position. *See Pujol-Alvarez v. Grupo HIMA-San Pablo, Inc.*, 249 F. Supp. 3d 591 (D.P.R. 2017) and *Malave Sastre v. Hosp. Doctor's Ctr., Inc.*, 93 F. Supp. 2d 105, 111 (D.P.R. 2000). These cases, however, are easily distinguishable because the plaintiffs did not include inherited causes of action.

from respiratory difficulties and distress which caused her the cardiorespiratory arrest. For said *hereditary cause of action*, plaintiffs claim a sum no less than One Million ($1,000,000.00) Dollars.

**ECF No. 4** at 12 (emphasis added). As such, the Court finds that plaintiffs properly included an inherited cause of action.[7] The Court therefore holds that DCH's arguments attacking plaintiffs' "lack of standing" are not meritorious and otherwise non-jurisdictional.

DCH's motion for summary judgment must be stricken for being untimely (to the tune of an almost seven-month delay). Contrary to DCH's averments, the arguments therein do not impugn the Court's subject-matter jurisdiction, thereby excusing DCH's flaunting of Court imposed case management deadlines.

In any event, the Court would be well within its authority to strike DCH's motion for summary judgment even if it did raise jurisdictional arguments. "It is axiomatic that a litigant who ignores a case-management deadline does so at his peril." *Vázquez-Rijos v. Anhang*, 654 F.3d 122 (1st Cir. 2011). *See also Rosario-Díaz v. González*, 140 F.3d 312, 315 (1st Cir. 1998) ("The Civil Rules endow trial judges with formidable case-management authority."). While a Court must entertain a jurisdictional argument at any stage of the litigation, *it can still manage the timing and manner in which those arguments are raised*. It is the Court, and not the parties, who sets the clock. Where, as here, a defendant files a motion impugning the Court's jurisdiction over the case at such a late stage of the proceedings and without first seeking leave to do so, "the belated filing

---

[7] The Court also finds that the word "hospitalized" includes the moment of transfer – a transfer is not a discharge. The actual time of Jaraingelyz's death is disputed and not apposite to the inquiry at hand.

of a motion to dismiss for want of subject matter jurisdiction *can have consequences in terms of a court's case-management decisions."* Bolduc v. United States, 402 F.3d 50, 54 (1st Cir. 2005) (emphasis added). *See also Ungar v. Palestine Liberation Org.*, 402 F.3d 274, 294 (1st Cir. 2005).

### V. Conclusion

Based on all the above, plaintiffs' motion to strike (**ECF No. 60**) is granted. DCH's motion for summary judgment (**ECF No. 55**) shall be stricken from the record accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2021.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**